States, I am constrained to enter my protest against such a dangerous perversion of the principles of the constitution. To sanction such a position, under circumstances now existing in our country, implies, in my judgment, a most unenviable condition of intellect, and the possession of a measure of courage, physical and moral, to which I can lay no claim. The character and tendencies of this doctrine are not now to be settled by unmeaning abstractions and metaphysical speculations. The period when these could have been available has gone by, and the bitter fruits of this sad error are now fully developed in its practical results. It has plunged those who have been its deluded victims into one of the deadliest conflicts the world has ever witnessed. Its blighting influences are now frightfully apparent in the wide-spread suffering, desolation, and ruin, which it has brought upon the states which have so madly raised the banner of revolt. The loyal states, too, have laid liberal offerings on the altar of sacrifice. In their patriotic devotion to the government of their fathers, and impelled by a stern, unconquerable purpose of defending, preserving, and perpetuating it, they have cheerfully borne a severe trial of their energies, and profusely lavished their treasures and poured out their blood. The sacrifice, though costly, we may well hope, will be fully repaid by the end to be achieved.

I have now only to say, that upon none of the grounds urged, can the exceptions to this indictment be sustained. The demurrer, as also the motion to quash in the case of Catherine Parmenter, are therefore overruled.

## Case No. 14,756a.

UNITED STATES v. The CATHERINE.

[See Case No. 14,755.]

## Case No. 14,757.

UNITED STATES v. The CATHERINE.

[See Case No. 14,755.]

## Case No. 14,758.

UNITED STATES v. CATON.

[1 Cranch. C. C. 150.] [1]

Circuit Court, District of Columbia. Dec. Term, 1803.

CONTEMPT—REFUSAL TO TESTIFY BEFORE GRAND JURY.

It is a contempt of court in a witness to refuse to answer proper questions before the grand jury, for which he may be fined, and required to give security for his good behavior.

[Cited in U. S. v. Anonymous, 21 Fed. 770.]

Attachment of contempt on complaint of the grand jury, signed by their foreman, that

[1] [Reported by Hon. William Cranch, Chief Judge.]

Caton had refused to answer questions, and behaved in an insolent manner, and had threatened some of the grand jurors. Upon examining on oath two of the grand jurors, and the facts being proved, he was fined five dollars and ordered to give security for his good behavior for one year, himself and one surety in fifty dollars each—or himself in fifty dollars with two sureties in twenty-five dollars each.

## Case No. 14,759.

UNITED STATES v. CAUSIN.

[1 Hayw. & H. 37.] [1]

Circuit Court, District of Columbia. May 1, 1841.

OFFICERS—TERMS OF OFFICE—JUDGE.

By the act of congress of May 25, 1838 [5 Stat. 229], the additional judge of the orphans' court appointed under that act held his office for life, and the office was not vacant on the death of the judge he was commissioned to assist.

The petitioners, Richard Wallach and others, by their counsel, J. M. Carlisle and Henry May, pray that a writ of quo warranto be awarded, and directed to Nathaniel P. Causin, commanding him to be and appear before the court to exhibit the right and authority under and by virtue of which he exercises the powers, functions, and authority of judge of the orphans' court.

The facts as stated in the petition are as follows: In 1838 the office of judge of the orphans' court of the county of Washington, District of Columbia, was held by Samuel Chase, who, by reason of his age and infirmities, became disqualified from performing the duties of the office. That congress, on the 25th of May, 1838,[2] provided for the appointment of an additional judge of the orphans' court; that under this act the president appointed and commissioned N. P. Causin to the office created by said act; that Samuel Chase since died. The petitioners hold that the office of the judge of said orphans' court has become vacant, and show that the

[1] [Reported by John A. Hayward, Esq., and George C. Hazleton. Esq.]

[2] Act May 25, 1838, c. 85: "Whereas, the judge of the orphans' court in, &c., is, by reason of age and infirmity, disqualified for the due and proper discharge of the duties of his office.

"Be it enacted, &c.. That there shall be appointed in and for the county of Washington, an additional judge of the orphans' court, who shall take an oath for the faithful and impartial discharge of the duties of his office, and who shall have the same powers, perform the same duties and receive the same salary, as are exercised, performed and received by the present judge of the said orphans' court.

"Sec. 2. That during the life or continuance in office of the present judge of the said orphans' court, the powers of the said orphans' court shall be vested in the said two judges jointly, or may be exercised by the said additional judge separately, as provided in the foregoing section, and that after the death or resignation of the present judge, the said orphans' court shall consist of a single judge as heretofore."